UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HIGUERAL PRODUCE, INC.,

                                    Plaintiff,

                                                                    **REPORT AND**
            -against-                                               **RECOMMENDATION**
                                                                    18-CV-6760-NGG-SJB
CKF PRODUCE CORP.,
CKF PRODUCE II CORP.,
KOJI UENO,
ELPIDIO K. UENO,

                                    Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

On November 28, 2018, Plaintiff Higueral Produce, Inc. ("Higueral") brought this action against Defendants CKF Produce Corp. ("CKF"), CKF Produce II Corp. ("CKF II"), Koji Ueno ("K. Ueno"), and Elpidio K. Ueno ("E. Ueno") (collectively, "Defendants"). (*See* Compl. dated Nov. 28, 2018, Dkt. No. 1). Higueral alleges that Defendants violated the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, when they failed to pay for produce they purchased from Higueral. (*Id.* ¶¶ 8–10). After Defendants each failed to appear and a default was entered, (Clerk's Entry of Default ("Clerk's Default") dated Jan. 11, 2019, Dkt. No. 11), Higueral moved for a default judgment, (Mot. for Default J. ("Mot.") dated Feb. 12, 2019, Dkt. No. 13). On February 13, 2019, the Honorable Nicholas G. Garaufis referred the motion to the undersigned for a report and recommendation. (Order Referring Mot. dated Feb. 13, 2019). For the reasons stated below, it is respectfully recommended that Higueral's motion for default judgment be granted against all Defendants, except CKF II.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Higueral is an Arizona corporation with its principal place of business in Rio Rico, Arizona. (Compl. ¶ 3). It buys and sells wholesale quantities of produce. (*Id.*). At all relevant times, Higueral was subject to and licensed under PACA as a dealer. (*Id.*). CKF is a New York corporation with its principal place of business in Brooklyn, New York. (*Id.* ¶ 4). It buys wholesale quantities of produce for resale. (*Id.*). CKF II is also a New York corporation with its principal place of business in Brooklyn, New York. (Compl. ¶ 5).[1] It also buys wholesale quantities of produce for resale. (*Id.*). K. Ueno and E. Ueno were "officer[s], director[s] and/or shareholder[s] of CKF, . . . [and] controlled the operations of CKF." (*Id.* ¶¶ 6–7). "CKF II commenced operations in or around April, 2017[.]" (*Id.* ¶ 43). Higueral alleges, "upon information and belief," that CKF II was "under the direction and control of CKF, K. Ueno, and E. Ueno" and used the "tangible and intangible assets of CKF in its operations." (*Id.*).

Between July 27, 2018 and August 28, 2018, Higueral sold and delivered produce to CKF worth $109,898.07. (Compl. ¶ 9). Defendants—except CKF II—accepted the produce from Higueral but failed to pay for it, despite repeated demands from Higueral. (*Id.* ¶¶ 9–10). CKF also received all of Higueral's invoices without objection. (*Id.* ¶ 36). Higueral alleges, again "[u]pon information and belief," that "CKF II assumed the liabilities of CKF in order to continue doing business with CKF's vendors and customers." (*Id.* ¶ 44). Higueral alleges "[t]he assumption and continuation of CKF's

---

[1] The Complaint contains two paragraphs that are virtually identical to each other, both referring to CKF's citizenship. (Compl. ¶¶ 4–5). The Court assumes the first refers to CKF, and that the second is intended to refer to CKF II.

business by CKF II, without payment of the monies due to Plaintiff, has prevented Plaintiff from recovering the debt owed for produce delivered to CKF." (*Id.* ¶ 45).

Higueral brought this action on November 28, 2018, alleging eight claims. For several of these claims, Higueral does not indicate whether they are being brought under PACA or state law. The Complaint alleges: (1) failure to make payment to Higueral from the PACA statutory trust, in violation of PACA and PACA regulations and seeks injunctive relief against all Defendants, (Compl. ¶¶ 14–16); (2) failure of Defendants "to promptly tender to Higueral full payment" for the delivered produce in violation of PACA and seeks damages from all Defendants, (*id.* ¶¶ 17–21); (3) unlawful dissipation of PACA trust assets by a corporate official and seeks damages from K. Ueno, (*id.* ¶¶ 22–26); (4) unlawful dissipation of PACA trust assets by a corporate official and seeks damages from E. Ueno, (*id.* ¶¶ 27–31); (5) failure to pay for goods sold and seeks damages from all Defendants, (*id.* ¶¶ 32–34); (6) breach of contract and seeks damages from CKF, (Compl. ¶¶ 35–40); (7) successor liability and seeks damages, plus accrued interest, costs, and attorney's fees, from CKF II, (*id.* ¶¶ 41–48; Compl. Prayer for Relief at 8); and (8) interest and attorney's fees under PACA, from all Defendants, (Compl. ¶¶ 49–51).

In its motion, Higueral moved for default judgment under PACA only. (*See* Mem. of Law in Supp. ("Pl.'s Br."), dated Feb. 12, 2019, Dkt. No. 15, at 2–8 (discussing liability under PACA only)). Higueral seeks $109,898.07 in damages, plus $9,497.55 in interest through February 12, 2019 (the day the motion was filed) and $6,400.51 in attorney's fees and costs, for a total amount of $125,796.13. (Compl. Prayer for Relief at 7–8; Mot. at 1).

3

CKF was served with a summons and Complaint on December 4, 2018 via the Office of the Secretary of State of New York.  (Summons Returned Executed ("CKF Summons") filed Dec. 10, 2018, Dkt. No. 7, at 1).  Higuera's attorney, Gregory Brown ("Brown"), also mailed a duplicate copy of the summons and Complaint, marked personal and confidential, to CKF's business address in Brooklyn, NY at 29-31 Brooklyn Terminal Market on December 10, 2018.  (Suppl. Notice, attached as Ex. 1 to CKF Summons, Dkt. No. 7).  CKF II was served with a summons and Complaint on December 4, 2018 via the Secretary of State of New York.  (Summons Returned Executed ("CKF II Summons") filed Dec. 10, 2018, Dkt. No. 8, at 1).  Brown also mailed a duplicate copy of the summons and Complaint, marked personal and confidential, to CKF II's business address in Brooklyn at 10013 Foster Avenue on December 10, 2018.  (Suppl. Notice, attached as Ex. 1 to CKF II Summons, Dkt. No. 8).  K. Ueno was served personally with a summons and Complaint on December 4, 2018.  (Summons Returned Executed ("K. Ueno Summons") filed Dec. 5, 2018, Dkt. No. 6, at 1).  E. Ueno was served with a summons and Complaint on December 4, 2018 via Feliza Ueno, E. Ueno's daughter, at his place of residence.  (Summons Returned Executed ("E. Ueno Summons") filed Dec. 5, 2018, Dkt. No. 5, at 1).  A duplicate copy of the summons and Complaint, marked personal and confidential, was also mailed to E. Ueno's residence in North Baldwin, NY at 2120 Grove Street.  (*Id.*).

Despite this service, each Defendant failed to appear, answer, or otherwise respond to the Complaint.[2]  Higueral sought certificates of default against Defendants

---

[2] Plaintiff's counsel, Gregory Brown, has informed the Court that he has communicated with an attorney for Defendants, Roger M. Newyear.  The parties were engaged in settlement discussions at one time.  However, the parties were unable to reach a settlement.  Defendants' counsel has not made an appearance before the Court,

on January 2, 2019, (Req. for Certificate of Default, Dkt. No. 10), which was granted

nine days later, (Clerk's Default).  Higueral moved for default judgment on February 12,

2019.  (Mot.).[3]  The motion for default judgment was mailed to the last known

residences of the individual Defendants and to the last known business addresses of the

corporate Defendants on February 12, 2019, pursuant to Local Civil Rule 55.2(c).

(Certificate of Service dated Feb. 12, 2019, Dkt. No. 16).  Each Defendant failed to

respond to the motion for default judgment.

DISCUSSION

I.    <u>Entry of Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for

obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-

2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and

recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief

is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after

default has been entered, and the defendant fails to appear or move to set aside the

---

and Defendants have not responded to the Complaint within the extended period of time Plaintiffs agreed to wait for a responsive pleading.  (Letter dated Jan. 18, 2019, Dkt. No. 12; Decl. of Gregory Brown in Supp. of Mot. ("Brown Decl.") dated Feb. 12, 2019, Dkt. No. 14, ¶ 9).

3 On March 4, 2019, Brown filed a Supplemental Declaration with information regarding a March 1, 2019 press release from the United States Department of Agriculture ("USDA"), which stated the USDA was filing an action against CKF based on its failure to make payments to 22 produce sellers.  (Suppl. Decl. of Gregory Brown ("Suppl. Brown Decl."), Dkt. No. 18, ¶¶ 2–3).  The Supplemental Declaration acknowledged that these USDA proceedings would not have any effect on Higueral's claims against Defendants.  (*Id.* ¶ 6).

default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).

The Clerk entered a default against all Defendants on January 11, 2019. (Clerk's Default). The next question, before reaching liability or damages, is whether Defendants' conduct is sufficient to warrant default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by Defendants to respond to the Complaint demonstrates the default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). CKF and CKF II had sufficient notice of the present litigation because they were properly served with a summons and Complaint, which were left with authorized agents in the Office of the Secretary of State of New York on December 4, 2018. (CKF Summons; CKF II Summons). K. Ueno received sufficient notice of the present litigation because he was properly served with a summons and Complaint, which were served on him personally. (K. Ueno Summons). E. Ueno received sufficient notice of the present litigation because he was properly served with a summons and

Complaint at his residence via his daughter, a person of suitable age and discretion. (E. Ueno Summons; *see* Fed. R. Civ. P. 4(e)(2)(B)).

Notwithstanding this notice and service, Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend themselves to the Court, thus constituting willfulness in the context of default judgment. *See, e.g*., *Sola Franchise Corp. v. Solo Salon Studios Inc.,* No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to the allegations because Defendants did not appear nor did they present evidence of any defense.

> [W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted.

*Id.* (quotations and citations omitted); s*ee, e.g*., *Indymac Bank*, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether . . . defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

Third, Higueral would be prejudiced if the motion for default were denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Dkt. No. 18 (Jan. 26, 2009); *see also*

*Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims adequately set forth in the Complaint.").

As a result, all three factors permit entry of default judgment. The Court now turns to the liability imposed, damages, and other relief awarded in such a judgment.

II.   Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 2688.1 (3d ed. 2017) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."). The Court will first discuss CKF's liability, then address K. Ueno and E. Ueno's individual liability, and finally analyze CKF II's alleged successor liability.

8

A.    CKF's Liability Under PACA

PACA was enacted in 1930 "to regulate the interstate sale and marketing of perishable agricultural commodities." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d. Cir. 2007).  PACA gives growers and sellers of agricultural produce "a self-help tool enabling them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." *Id.* (quotations omitted).  Plaintiff alleges that CKF was subject to PACA as a dealer.  (Compl. ¶ 4).  A dealer is "any person engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6); *Double Green Produce, Inc. v. Forum Supermarket Inc.* ("*Double Green I*"), No. 18-CV-2660, 2019 WL 1387538, at *3 (E.D.N.Y. Jan. 29, 2019) (report and recommendation).  Under Section 499e(c)(2) of PACA, a dealer of perishable commodities must hold the commodities themselves, or the proceeds from them, in a trust for the unpaid seller until full payment is made:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker . . . and any receivables or proceeds from the sale of such commodities . . . shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2); *see S. Katzman Produce, Inc. v. Won*, No. 08-CV-2403, 2009 WL 2448408, at *3 (E.D.N.Y. Aug. 7, 2009) ("[A] dealer who receives goods or derives proceeds from a wholesaler's produce[ ] is to hold those goods in trust for the benefit of the unpaid seller.").  "[T]he trust is formed at the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full," *G & P Warehouse, Inc. v. Cho's Church Ave. Fruit Mkt.*, No. 15-CV-6174, 2016 WL 5802747, at *4 (E.D.N.Y. Aug.

12, 2016) (quotations omitted), *report and recommendation adopted*, 2016 WL 5716819 (Sept. 29, 2016), and it is "'intended exclusively to benefit produce suppliers,'" *id.* (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 242 (2d. Cir. 2006)).  The creation of the trust establishes a "fiduciary obligation . . . to repay the full amount of the debt owed to the PACA beneficiary," *id.* (quotations omitted), and protects sellers from "the risk of default by buyers," *"R" Best Produce*, 467 F.3d at 242 (quotations omitted).  That "fiduciary obligation under PACA" includes the duty "'to repay the full amount of the debt owed to the PACA beneficiary.'" *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC*, No. 09-CV-2614, 2011 WL 6329194, at *5 (E.D.N.Y. Dec. 16, 2011) (quoting *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001)).

PACA "provides a private right of action to trust beneficiaries seeking to enforce payment from the trust." *Double Green Produce, Inc. v. Forum Supermarket Inc.* ("*Double Green II*"), No. 18-CV-2660, 2019 WL 2162309, at *3 (E.D.N.Y. May 17, 2019) (citing 7 U.S.C. § 499e(c)(5)(i)).  To recover proceeds from a PACA-created trust, a plaintiff must demonstrate the following five elements:

> (1) [t]he commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.

*Maspeth Trading, Inc. v. Ou Jiang Supermarket, Inc.*, No. 12-CV-1997, 2014 WL 3548507, at *4 (E.D.N.Y. July 15, 2014) (quotations omitted) (adopting report and recommendation).

Higueral has plead sufficient facts to demonstrate each of these five elements against CKF.  First, Higueral sold CKF fresh produce, specifically mangos, which are considered a "perishable agricultural commodity."  7 U.S.C. § 499a(b)(4)(A) ("The term 'perishable agricultural commodity' . . . [m]eans . . . [f]resh fruits and fresh vegetables of every kind and character[.]"); (see Invoices, attached as Ex. J to Brown Decl., Dkt. No. 14).  Second, CKF, the purchaser, was a licensed dealer under PACA at the time of the transaction between itself and Higueral.[4]  (Compl. ¶ 4; see USDA PACA License Information ("CKF PACA License"), attached as Ex. H to Brown Decl., Dkt. No. 14 (listing CKF's PACA license number as "20161004")).  Third, it appears the transactions at issue involved produce that was sent from Higueral's place of business in Arizona to CKF's place of business in New York, and they, therefore, occurred in interstate commerce.  (Compl. ¶¶ 3–4, 9); see 7 U.S.C. § 499a(3)).  Fourth, Higueral, the seller, has

_____

[4] A plaintiff must be a dealer to become a trust beneficiary and thus receive PACA's protection in federal court.  See 7 U.S.C. § 499e(c)(2); Double Green I, 2019 WL 1387538, at *3.  No wholesale retailer may be considered a dealer until "the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000," unless that individual "elect[s] to secure a license."  7 U.S.C. § 499a(b)(6).  Although neither Higueral nor CKF has proffered information regarding their yearly cost of purchases, both had PACA licenses at the time the subject transactions were made, (see CKF PACA License; USDA PACA License Information ("Higueral PACA License"), attached as Ex. G to Brown Decl., Dkt. No. 14), and that is sufficient for Higueral to obtain PACA protection and for CKF to be deemed a dealer.  See Double Green II, 2019 WL 2162309, at *5.  CKF's PACA license appears to have been "[t]erminated."  (USDA PACA License Information ("CKF PACA License"), attached as Ex. H to Brown Decl., Dkt. No. 14).  Upon the Court's own review of the USDA's PACA license database, the status is listed as "Terminated - Unpaid Award(s)" and there appear to be at least two complaints pending against CKF.  USDA Agric. Marketing Serv., Fair Trade Pracs., PACA Public Search, https://usdaams.service-now.com/public_search (last visited Aug. 16, 2019).  CKF's PACA license may have been terminated while some of the subject transactions were made.  The Court does not believe this impacts Higueral's PACA claims.  Indeed, removing PACA protection for some transactions would create the inequitable result that the PACA licensee could continue to accept produce and goods, not pay for them, and evade PACA liability by terminating its own license, or acting in a way that would cause its license to be revoked.

not received full payment for the goods it sold to CKF.  (Compl. ¶ 10).  Fifth, Higueral has preserved its trust rights through written notice to CKF.  Under PACA, this can be done by using "ordinary and usual billing or invoice statements to provide notice" to the buyer and by including the necessary language prescribed by the PACA statute on each of those invoices.[5]  7 U.S.C. § 499e(c)(4).  Each of the invoices from July 27, 2018 to August 28, 2018 that are the subject of this action and the motion for default judgment contained this language.  (*See* Invoices).

Higueral has, thus, demonstrated that CKF breached its fiduciary duty by failing to pay its debt owed to Higueral, a PACA beneficiary, and thereby established CKF's liability.  *See, e.g.*, *Won*, 2009 WL 2448408, at *4; *Maspeth Trading, Inc.*, 2014 WL 3548507, at *4–5.

B.    K. Ueno and E. Ueno's Personal Liability Under PACA

"An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Coosemans Specialties*, 485 F.3d at 705 (collecting cases).  "PACA trustees 'are required to maintain trust assets in a manner that such assets are *freely available* to satisfy outstanding obligations to sellers of perishable agricultural

---

[5] The language is as follows:

The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

commodities.'" *Id.* at 706 (quoting 7 C.F.R. § 46.46(d)(1)). "'[A]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful.'" *Id.* (quoting 7 C.F.R. § 46.46(d)(1)). And "dissipation" is "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2). Where an individual is alleged to have been in control of PACA trust assets and is responsible for the dissipation, he can be personally liable and jointly and severally liable with the corporate dealer-buyer. *See Giumarra Agricom Int'l, LLC v. Fresh Growers Direct, Inc.*, No. 17-CV-2222, 2018 WL 1136037, at *5 (E.D.N.Y. Jan. 30, 2018), *report and recommendation adopted*, 2018 WL 1136085 (Feb. 28, 2018); *Maspeth Trading Inc. v. New A & N Food Mkt., Inc.*, No. 13-CV-6454, 2014 WL 3762694, at *6 (E.D.N.Y. June 10, 2014), *report and recommendation adopted*, 2014 WL 3762965 (July 30, 2014); *Brigiotta's Farmland Produce & Garden Ctr., Inc. v. Przykuta, Inc.*, No. 05-CV-273, 2006 WL 3240729, at *4 (W.D.N.Y. July 13, 2006).

Higueral has demonstrated that both K. Ueno and E. Ueno can be held jointly and severally liable under PACA for CKF's violation of its fiduciary duties. First, Higueral alleged in its Complaint that CKF was unable to pay the overdue balance under the PACA trust. (Compl. ¶ 13). And as noted above, by so doing, Higueral established CKF's breach of its fiduciary duty and PACA liability. Higueral alleges K. Ueno and E. Ueno were both "officer[s], director[s], and/or shareholder[s] of CKF" during the relevant period and were each "in a position of control over the PACA trust assets belonging to [Higueral]." (*Id.* ¶¶ 6, 7, 23, 28). The Complaint also alleges that both

failed to maintain the assets necessary to pay Higueral and thereby dissipated the PACA trust's assets.  (*Id.* ¶¶ 24–25; 30–31).

These allegations are accepted as true in light of Defendants' default, and are sufficient to show K. Ueno and E. Ueno had control over the PACA trust and can be held personally liable, and jointly and severally liable, for CKF's breach of fiduciary duty. *See, e.g.*, *John Georgallas Banana Distribs. of N.Y., Inc. v. N & S Tropical Produce, Inc.*, No. 07-CV-5093, 2008 WL 2788410, at *4 (E.D.N.Y. July 15, 2008) (adopting report and recommendation).

## C.   CKF II's Liability Under Successor Liability

Higueral also sued CKF II under the theory of successor liability.  "Although the Second Circuit has not yet addressed the applicability of successor liability in the PACA context, the 'scant discussion' in this circuit suggests that a successor may be liable for its predecessor's PACA liability." *S. Katzman Produce, Inc. v. JAT Bev. Inc.*, No. 17-CV-7930, 2018 WL 6437058, at *4 (S.D.N.Y. Dec. 7, 2018) (citing *Hop Hing Produces Inc. v. X & L Supermarket, Inc.*, No. 12-CV-1401, 2013 WL 1232948, at *9 (E.D.N.Y. Mar. 26, 2013)); *see also Moza LLC v. Tumi Produce Int'l Corp.*, No. 17-CV-1331, 2018 WL 2192188, at *3 (S.D.N.Y. May 14, 2018).

There is no provision in PACA that addresses successor liability, and therefore, successor liability would have to be based on common law principles, including those of the state in which CKF is incorporated, *i.e.* New York.  (Compl. ¶ 4).  "Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006).  There are four exceptions to this general rule: "'(1) [the successor] expressly or impliedly assumed the predecessor's tort

14

liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.'" *Id.* (quoting *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245 (1983)). The second and third theories are thought to be co-extensive and synonymous with the *de facto* merger doctrine. *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1535 (S.D.N.Y. 1985) ("The two theories that are the subject of the defendants' substantive motion, consolidation or merger and continuation, tend to overlap. Consequently, no criteria can be identified that distinguish them in any useful manner.") (quotations omitted); *see also Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 n.3 (2d Cir. 2003); *Moza LLC*, 2018 WL 2192188, at *4 ("[T]he mere continuation and de facto merger [doctrines] . . . are so similar that some courts consider them as a single [doctrine].") (quotations omitted); *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 401 (S.D.N.Y. 2012) (same).

Higueral has not provided the Court sufficient information to establish successor liability for CKF II. Higueral has alleged that CKF II began operations in or around April 2017, almost a year and a half before CKF ceased operations in or around September 2018. (Compl. ¶¶ 42–43). Higueral claims, only "upon information and belief," that CKF, K. Ueno, and E. Ueno had direction or control over CKF II, and that CKF II had assumed the liabilities of CKF in order to continue doing business with CKF's vendors and customers. (*Id.* ¶¶ 43–44). Higueral also alleges in its Complaint that "CKF II's assumption and continuation of CKF's business by CKF II was undertaken solely as a means of enabling CKF to fraudulently escape its liability to [Higueral] and other produce suppliers." (*Id.* ¶ 46). Lastly, Higueral alleges that "the continuity of

15

ownership, management, assets and general business operations of CKF by CKF II establish that CKF II has successor liability for the debts of CKF." (*Id.* ¶ 47).

In its memorandum of law in support of its motion for default judgment, Higueral provided only one sentence on the issue of successor liability and cited to only one case to support its claim of successor liability. (*See* Pl.'s Br. at 5). That is, it cites as "see generally" the *S. Katzman Produce* case, 2018 WL 6437058, but fails to state which of the four types of successor liability—*de facto* merger, or otherwise—listed in *S. Katzman Produce* applies to the facts of this case. The brief then fails to identify how the elements of such claim have been satisfied. And in *S. Katzman Produce* itself, the Court had a bevy of facts and evidence that went beyond the Complaint's allegations and which are decidedly absent in this case. *See id.* at *4 ("Moreover, the Court infers from Rodriguez's bank statements that Rodriguez continued the JAT Defendants' business by processing the JAT Defendants' accounts payable and receivable through her personal account, and that there is continuity of ownership based upon evidence that JAT Defendant Ariel Tejada has entered the Hunts Point Terminal Market Cooperative Association using the identity card and business address of Albatross Produce, and that Ariel Tejada has check signing authority, along with Rodriguez, for checks drawn on bank accounts belonging to Albatross Produce. The timing of certain unusually large deposits into Rodriguez's bank account, which Plaintiffs allege are proceeds from the sale of produce by the JAT Defendants, also supports an inference that Rodriguez's continuation of the JAT Defendants' operations was undertaken to allow the JAT Defendants to evade their liability to Plaintiffs.") (citations omitted); *see also Tele Danmark, USA, Inc. v. Totalaxcess.com, Inc.*, No. 02-CV-3152, 2003 U.S. Dist. LEXIS

22862, at *2 (N.D. Cal. Dec. 5, 2003) (imposing successor liability against defaulting defendant following submission of documentary evidence).

What Higueral has submitted and argued is inadequate. It is not the Court's job to determine which form of successor liability would best fit the relationship between CKF and CKF II or to make arguments supporting this claim for Higueral, even in the context of default judgment. *See, e.g.*, *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07-CV-1784, 2007 WL 3287368, at *7 (S.D.N.Y. Nov. 7, 2007) (denying default judgment in part, where "[Plaintiff] has not briefed the legal standards for issuing injunctions against non-parties, or discussed how those standards would support the injunction requested here.") (citation omitted) (report and recommendation); *cf.* *Tolbert v. Queens Coll.*, 242 F.3d 58, 76 (2d Cir. 2001) ("We conclude that defendants' single perfunctory sentence . . . does not properly present the Title VI punitive damages issue for review."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly[.]") (quotations omitted). Due to the inadequate explication of this issue and lack of any documentary evidence to support its theory, the Court recommends denying Higueral's motion seeking a judgment against CKF II based on successor liability.

III.   <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "[A]lthough the default establishes a defendant's

liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)). Although the court can hold a hearing on damages in the context of default judgment, "the decision of whether a hearing is necessary [is left] to the discretion of the district court." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see* Fed. R. Civ. P. 55(b)(2) ("The court *may* conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]") (emphasis added). Because Higueral has not requested a hearing and Defendants have not appeared, the Court does not find a hearing necessary.  *See Reilly v. Plot Commerce*, No. 15-CV-5118, 2016 WL 6837895, at *5 (S.D.N.Y. Oct. 31, 2016) ("Since neither party has requested a hearing on the issue of damages, and since defendant did not submit any written materials, I have conducted the inquest based solely upon the materials submitted by plaintiff.").

Under PACA, a dealer who fails or refuses to make full payment for commodities or fails to maintain the trust as required is liable to the injured party for the full amount of damages sustained.  7 U.S.C. §§ 499b(4) & 499e(a).

Higueral has provided, via attachments to the declaration of Brown, copies of each of the unpaid invoices and an account statement as evidence of damages.  (*See* Invoices).  These invoices illustrate that each of the unpaid transactions occurred

between July 27, 2018 and August 28, 2018, as alleged in the Complaint. (*Id.*; Compl. ¶ 9); *see, e.g.*, *G & P Warehouse, Inc.*, 2016 WL 5802747, at *6 (relying upon invoices submitted as exhibits to determine damages); *Hop Hing Produces Inc. v. X & L Supermarket, Inc.*, No. 12-CV-1401, 2013 WL 1232919, at *3 (E.D.N.Y. Mar. 4, 2013) (same), *report and recommendation adopted*, 2013 WL 1232483 (Mar. 27, 2013); *Mikey's Choice LLC v. Fagos LLC*, No. 08-CV-4492, 2010 WL 935550, at *3 (E.D.N.Y. Feb. 19, 2010) (same), *report and recommendation adopted*, 2010 WL 934260 (Mar. 12, 2010).

Higueral is seeking in damages the principal sum of the unpaid invoices, $109,898.07.[6] (*See* Invoices; Compl. Prayer for Refief at 7–8). Defendants have not responded to Higueral's motion, and therefore have not opposed this amount or the validity of the invoices. Accordingly, the Court finds that Higueral is owed the $109,898.07, and it respectfully recommends that Higueral be awarded this amount in damages. *See, e.g.*, *G & P Warehouse, Inc.*, 2016 WL 5802747, at *6 (awarding damages based on invoices in a motion for default judgment); *Mikey's Choice LLC*, 2010 WL 935550, at *3 (same).

---

[6] Higueral requests $109,898.07, but this amount is less than the sum of the totals listed on each subject invoice. (*See* Invoices). The Court believes this reflects post-invoice agreements the parties made to reduce the amount owed. The Court reaches this conclusion through its review of email exchanges Higueral provided between representatives of Higueral and CKF. (*See* E. Ueno Emails, attached as Ex. I to Brown Decl., Dkt. No. 14). In one of those emails, someone named Jose Ramirez, with a "higueral.com" email address, wrote to CKF saying "there was a $1.00 per box reduction, and [the] adjustment is final." (*Id.* at 1). This exchange implies that the invoices may reflect greater amounts than what the parties eventually agreed to pay.

IV.    <u>Prejudgment Interest</u>

In addition to damages, Higueral also seeks prejudgment interest on the

principal amount of $109,898.07, beginning on the date each invoice became past due

through the date it filed its motion for default judgment, namely February 12, 2019.

(Compl. ¶ 21; Brown Decl. ¶ 16).  At a rate 18% per annum, Higueral's attorneys

calculated that this amounts to a total of $9,497.55.  (Brown Decl. ¶ 16; *see* PACA Trust

Debt of CKF ("Interest Chart"), attached as Ex. K to Brown Decl., Dkt. No. 14; Invoices).

"While PACA does not itself establish a right to interest and collection costs,

courts have found that the purchaser is required to pay such items when the parties'

contract so provides, and thus, in such a case, the interest and collection costs become

subject to the PACA trust together with the principal debt." *G & P Warehouse, Inc.*,

2016 WL 5802747, at *7 (quotations omitted) (collecting cases).  The "pivotal question"

in determining whether a plaintiff can recover prejudgment interest is "whether the

parties' contract provides for an award of interest and collection costs in favor of

plaintiff." *Id.* (quotations and alterations omitted); *see also Taylor & Fulton Packing,

LLC*, 2011 WL 6329194, at *8 ("Courts typically look to the contractual terms contained

in the invoices when determining the appropriate award."); *Brigiotta's Farmland

Produce*, 2006 WL 3240729, at *6 ("As with pre-judgment interest, contractual

provisions for attorney's fees are enforceable under PACA.").

Higueral included a standard-form provision in each of its invoices to CKF that

stated that "[i]nterest shall accrue on any past-due account balance at the rate of 1.5%

per month (18% per annum).  Buyer agrees to pay all costs of collection, including

attorney[']s fees." (Invoices).  This provision, which gave notice to CKF of interest that

would accrue on any past-due balance, is sufficient to award Higueral prejudgment

interest.  *See, e.g.*, *G & P Warehouse, Inc.*, 2016 WL 5802747, at *7; *Won*, 2009 WL 2448408, at *6.

Court have generally found that PACA sellers are entitled to prejudgment interest "at the rate of 1.5% per month specified in its invoices."  *G & P Warehouse, Inc.*, 2016 WL 5802747, at *7 (quotations omitted).  "When there is no evidence that defendant ever objected to this provision, and no evidence that the service charge of 1.5% per month, or 18% per annum, is outside the range of trade practice, courts may award prejudgment interest at that rate."  *Id.* (quotations and alterations omitted).  The Court therefore finds that Higueral's use of an 18% interest rate per annum (1.5% per month) is appropriate, reasonable, and in line with what other courts in this Circuit have awarded.  *See, e.g.*, *id.*; *Ne. Trading, Inc. v. Ven-Co Produce, Inc.*, No. 09-CV-7767, 2011 WL 4444511, at *5 (S.D.N.Y. Sept. 26, 2011).

In its motion, Higueral requests that the Court grant interest from the date each invoice became past due through the date the motion for default judgment was filed, February 12, 2019.  (Brown Decl. ¶ 16; Interest Chart).  However, Higueral has submitted two sets of conflicting dates to the Court for the date when payment from CKF was due and interest should accrue.  According to the account statement generated by Higueral itself, the due date for each of the subject invoices was 21 days after the produce was delivered.  (*See* Invoices at 1).  However, in the Interest Chart attached to the motion (generated by its attorneys), Higueral's counsel has indicated a ten-day due date, rather than 21 days.  (*See* Interest Chart).  Ten days is in accordance with PACA, which requires buyers to "make full payment promptly."  7 U.S.C. § 499b(4).  PACA's regulations, in turn, define "full payment promptly" as "within ten days after the day on which the produce is accepted."  7 C.F.R. § 46.2(aa)(5); *see Havana Potatoes of N.Y.*

*Corp. v. United States*, 136 F.3d 89, 91 (2d Cir. 1997). However, ten days is only the designated payment period, "unless the parties have agreed, in writing and before entering into the transaction, to different payment terms." *Id.* (citing 7 C.F.R. § 46.22(aa)(11)).

Because of what the account statements generated by Higueral state, it appears that the parties may have agreed to a 21-day payment period. (*See* Invoices at 1). Therefore, to resolve this issue, prior to entry of final judgment, Higueral's counsel must provide the Court with a basis for using the ten-day interest period, in lieu of what is written on Higueral's account statements.

Since the Court cannot determine at this time whether interest should accrue from ten days or 21 days after the produce was delivered, it cannot recommend the total amount of interest Higueral should be awarded. Once the commencement dates are determined, the Clerk of Court should calculate the interest using the following invoice amounts and per diem interest in the table below, from the date each payment was due through February 12, 2019.[7]

| Date Produce Delivered | Invoice Amount | Per Diem Interest |
|---|---|---|
| 7/27/18 | $15,960.00 | $7.87 |
| 8/2/18 | $15,105.00 | $7.45 |
| 8/3/18 | $20,697.60 | $10.21 |
| 8/12/18 | $17,543.55 | $8.65 |
| 8/16/18 | $16,119.92 | $7.95 |
| 8/28/18 | $24,472.00 | $12.07 |

---

[7] Higueral does not seek, and therefore the Court does not address, whether interest should be awarded until the day judgment is entered.

V.   <u>Attorney's Fees</u>

Higueral seeks a total of $6,333.75[8] in attorney's fees based on 16.3 hours of work performed by three attorneys, Brown, Louis W. Diess, III ("Diess"), and Blake Surbey ("Surbey").  (Brown Decl. ¶¶ 19, 21–22; *see* Attorney's Fees Billing Statement ("Billing Stmt., attached as Ex. L to Brown Decl., Dkt. No. 14).

"PACA explicitly provides for an award of attorneys' fees when the parties' contract so provides, as the fees become subject to the PACA trust together with the principal debt."  *G & P Warehouse, Inc*., 2016 WL 5802747, at *9 (quotations omitted).  As explained above, standard form provisions contained in invoices are considered terms of a contract between two parties under PACA.  *Id*. at *7.  Here, part of the standard form provision Higueral placed on each of its invoices to CKF provides that "[b]uyer agrees to pay all costs of collection, including attorney[']s fees."  (Invoices).  The Court agrees with Higueral that, by including this provision on its invoices, attorney's fees are available.

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to pay.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id*. at 184.  "The burden is on the party moving for attorney's fees to justify the hourly rates sought."  *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014), *report and recommendation adopted*,

---

[8] In its motion, Higueral seeks $6,400.51 in attorney's fees.  (Brown Decl. ¶ 16). As explained below, this number includes its request for $66.76 in costs.

2014 WL 1237127 (Mar. 25, 2014).  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, Mem. & Order dated Mar. 19, 2008, Dkt. No. 10.  The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary.  *See LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).  "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotations omitted), *report and recommendation adopted*, 2015 WL 5330388 (Sept. 11, 2015).

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award.  Three attorneys billed hours for this case: Brown, Diess, and Surbey.  (Brown Decl. ¶¶ 20–22).  Brown's rate was initially $385 an hour, but it increased to $400 per hour as of January 1, 2019; Diess's rate was $400 per hour, and Surbey's rate was $375 per hour.  (*Id*.).  Brown concentrates his practice on PACA-related matters and has been practicing since 2006.  (*Id.* ¶ 20).  Diess also concentrates his practice on PACA and has done so since 1992.  (*Id.* ¶ 21).  Surbey has concentrated his practice on PACA-related matters since 2011.  (*Id.* ¶ 22).  The motion does not indicate whether these attorneys are partners or associates.

24

"[T]he Second Circuit has held that in calculating the presumptively reasonable fee, courts should generally use the hourly rates employed in the district in which the reviewing court sits." *G & P Warehouse, Inc.*, 2016 WL 5802747, at *10 (quotations omitted). "Recent opinions from the Eastern District of New York have determined that reasonable hourly rates in this district are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298–99 (E.D.N.Y. 2012) (quotations omitted); *see Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-CV-3841, 2018 WL 4327923, at *9 (E.D.N.Y. July 9, 2018) (awarding Brown and Diess $375 per hour), *report and recommendation adopted sub nom. Cent. Produce Corp. v. 34-18 M&M Corp.*, 2018 WL 4326925 (Sept. 10, 2018); *G & P Warehouse, Inc.*, 2016 WL 5802747, at *11 ("Based on the Court's knowledge of the rates generally charged for this type of work in connection with a PACA default, the Court finds the rate of $365 per hour for the legal work performed by Mr. Brown to be within the reasonable range.") (collecting cases); *Hop Hing Produces, Inc.*, 2013 WL 1232919, at *6 (awarding hourly rate of $375 per hour to experienced PACA practitioner).

The Court finds the requested hourly rate of Diess to be reasonable, but finds the requested hourly rates for Brown and Surbey require reduction. Diess has 27 years of experience working on PACA-related matters, (Brown Decl. ¶ 21), and is a named partner at his firm. Diess was recently awarded the rate of $400 per hour by a court in this district in a case with a similar fact pattern. *See Double Green II*, 2019 WL 2162309, at *9. A $400 rate for Diess is, therefore, appropriate for this case.

Upon review of the billing records submitted, the Court has found two entries, dated January 14, 2019 and January 17, 2019, which utilized a billing rate of $425 per

hour.  (*See* Billing Stmt.).  Based on other information provided in the billing records, the Court presumes that this rate belongs to Diess.[9]  (*See id*.).  However, without more information regarding why this rate was utilized instead of the $400 requested, the Court cannot approve it.  Therefore, for those two entries, the Court will utilize the approved billing rate of $400 per hour for Diess, rather than $425, to calculate the fee award.

Brown has 13 years of experience working on PACA-related cases.  (Brown Decl. ¶ 20).  "Within the past several years, courts in this District have approved a rate of $365 per hour for Mr. Brown's services in PACA cases[.]"  *Cent. Produce Corp.*, 2018 WL 4327923, at *9 (increasing Brown's rate to $375 an hour); *see G & P Warehouse, Inc.*, 2016 WL 5802747, at *11–12 (awarding Brown an hourly rate of $365 for 11.10 hours on a PACA default judgment); *see also E. Armata, Inc. v. E. End Produce, Inc.,* No. 14-CV-44, 2015 WL 10457210, at *5 (E.D.N.Y. Jan. 7, 2015) (awarding Brown an hourly rate of $365 per hour for 13.05 hours on a PACA default judgment), *report and recommendation adopted*, 2016 WL 917935 (Mar. 9, 2016).  As recently as May of 2019, a court in this district approved a rate of $375 per hour for Brown.  *See Double Green II*, 2019 WL 2162309, at *9.  Additionally, the nature of the work in this case—a default judgment based on fairly simple facts—"was not sufficiently complex or difficult to litigate as to justify a rate at the high end of the range of fees typically awarded."  *John v.*

---

[9] In the billing records, there is a column marked, "Tmkr." (Billing Stmt.).  The Court presumes this acronym stands for "timekeeper" and each number in this column denotes which attorney has performed each task.  The "Tmkr" number that used a billing rate of $425 per hour was number two.  (*Id.*).  This timekeeper utilized a billing rate of $400 per hour prior to the entry dated 1/14/2019.  (*Id.*).  Therefore, the Court concludes timekeeper number two is Diess, and that his rate increased at some point from $400 to $425 per hour.

*DeMaio*, No. 15-CV-6094, 2016 WL 7469862, at *7 (E.D.N.Y. Sept. 29, 2016), *report and recommendation adopted*, 2016 WL 7410656 (Dec. 22, 2016).  Therefore, the Court finds that Brown's requested rates of $385 and $400 require adjustment.  Given Brown's level of experience, prior court awards for Brown's fees in this District, and the non-complex nature of the case, the Court awards Brown an hourly rate of $375.

Surbey has eight years of experience working on PACA-related matters.  (Brown Decl. ¶ 22).  The Court is unable to find an opinion in this District awarding Surbey attorney's fees, and none is cited.  Additionally, Higueral has failed to provide information regarding whether Surbey is an associate or a partner.  Based on the limited number of years working on these matters compared to his colleagues, the Court finds the rate of $375 per hour to be inappropriate.  Given his experience and the relatively simple nature of this default judgment, a rate of $350 per hour is appropriate.

Turning next to the reasonableness of the time expended, according to the billing records submitted, Higueral's attorneys spent a total of 16.3 hours on the case.  (*See* Billing Stmt.).  Having reviewed the hours and time records submitted, the Court finds the hours expended to be reasonable.  *See, e.g.*, *E. Armata, Inc.*, 2015 WL 10457210, at *5 (finding 13.05 hours a reasonable amount in a PACA default judgment case).

The Court, therefore, recommends an award of $5,985.00 in attorney's fees.

VI.    Costs

Higueral has requested costs in this matter.  (Compl. Prayer for Relief at 8).  Similar to interest and attorney's fees, "PACA does not require an award of costs, but does permit the court to enforce the parties' contractual agreement by granting such relief."  *G & P Warehouse, Inc.*, 2016 WL 5802747, at *12 (quotations omitted).  In this case, as mentioned above, the standard form provision included in each of Higueral's

27

invoices to CKF became part of the contractual agreement between the parties.  This provision stated, "[b]uyer agrees to pay *all costs* of collection, including attorney[']s fees."  (Invoices) (emphasis added).  Therefore, the Court finds that Higueral is entitled to costs it incurred in this action beyond attorney's fees.  *See, e.g.*, *E. Armata, LLC v. Brachs Five Towns, LLC*, No. 16-CV-2894, 2016 WL 11281384, at *11 (S.D.N.Y. Nov. 23, 2016) (awarding plaintiff costs in the full amount requested), *report and recommendation adopted*, 2017 WL 213068 (Jan. 18, 2017).

In its submissions to the Court, Higueral grouped attorney's fees and costs together, listing the total as $6,400.51.  (*See* Mot. at 1; Pl.'s Br. at 10).  Upon further review of the billing records, the Court found that an entry for online legal research costs in the amount of $66.76 was itemized in the billing statement.  (*See* Billing Stmt. at 1 (listing "Online legal research - Lexis/Nexis charges 11/18" as a separate item without a billing rate)).  As such, Higueral has only provided documentation for one cost incurred, legal research fees in the amount of $66.76.  (*See id.*).  Higueral's attorney, Brown, provided a sworn declaration affirming the information provided in the billing statement is true and accurate.  (Brown Decl. ¶ 19).  The Court therefore finds that $66.76 for legal research is a reasonable cost with adequate documentation, and therefore should be awarded.  *See Brachs Five Towns, LLC*, 2016 WL 11281384, at *11 (awarding $27.27 in online legal research expenses).

The Court therefore recommends Higueral be awarded $66.76 in costs.

<u>CONCLUSION</u>

For the reasons stated above, the Court respectfully recommends the following:

1.  The motion for default judgment be granted against CKF, K. Ueno, and E. Ueno in the total amount of $109,898.07, and that they be held jointly and

severally liable;

2. The motion for default judgment be denied against CKF II, and the claims against CKF II be dismissed without prejudice, *see, e.g.*, *D'Arrigo Bros. Co. of N.Y. v. Garden State Produce Co.*, No. 09-CV-4185, 2010 WL 5122592, at *1 (S.D.N.Y. Dec. 14, 2010) and *Fed. Fruit & Produce Co. v. Liborio Mkts. # 9, Inc.*, No. 12-CV-1145, 2013 WL 4838914, at *2 (D. Colo. Sept. 10, 2013);

3. Higueral be ordered to show cause why interest should begin accruing ten days, instead of 21 days, after each invoice date;

4. The request for prejudgment interest be granted at the rate of 18% per annum starting from the dates each invoice became due until February 12, 2019;

5. The request for attorney's fees be granted in the total amount of $5,985.00; and

6. The request for costs be granted in the total amount of $66.76.[10]

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by

---

[10] This resolves Claims 1–4 and 7–8, which the Court interprets as PACA claims from the factual averments contained therein, although they are not designated as such. With respect to the remaining claims, namely Claims 5–6, the Court concludes these are common law state claims on which Higueral did not move for default judgment, and recommends that they be dismissed without prejudice. *See, e.g.*, *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505, 2016 WL 6905946, at *5 (E.D.N.Y. Nov. 22, 2016) ("Any remaining claims in the Complaint that Plaintiff has abandoned in this Motion for Default Judgment are dismissed without prejudice.") (emphasis omitted); *Boost Worldwide, Inc. v. Talk Til U Drop Wireless, Inc.*, No. 14-CV-86, 2014 WL 5026777, at *2 n.2 (N.D.N.Y. Oct. 8, 2014) ("Plaintiff's complaint also alleges common law unfair competition and unjust enrichment.  Since Plaintiff has not addressed these claims in its motion for default judgment, the Court deems them abandoned and hereby dismissed without prejudice[.]").

the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.").

Higueral shall serve a copy of this Report and Recommendation on CKF, K. Ueno, E. Ueno, and CKF II and file proof of such service in the record.

SO ORDERED.

*/s/ Sanket J. Bulsara* August 16, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York